UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PAULINA L.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00289-JPH-MJD |
| | ) |
| ANDREW M. SAUL Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff, Paulina L., seeks judicial review of the Social Security Administration's decision denying her petition for Disability Insurance Benefits and Supplemental Security Income. She argues that the ALJ erred by (1) substituting her opinion for that of treating physicians; (2) not considering the exacerbating effects of non-severe impairments and the side effects of medication; and (3) not appropriately considering a closed period. Dkt. 9 at 15–20. For the reasons that follow, the decision is **AFFIRMED**.

**I.
Facts and Background**

On July 8, 2016, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging that her disability began on February 13, 2015. Dkt. 7-2 at 39. Plaintiff's application was initially denied on

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

September 19, 2016, and on reconsideration on December 19, 2016. *Id.* Administrative Law Judge Teresa Kroenecke held a hearing and in November 2018 issued a decision denying Plaintiff's claims. *Id.* at 51.

In her decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a)(4) and concluded that Plaintiff was not disabled. *Id.* at 41–51. Specifically, the ALJ found that:

- At Step One, Plaintiff had not engaged in substantial gainful activity[2] since the alleged onset date. *Id.* at 41.

- At Step Two, she had "the following severe impairments: history of breast cancer status post mastectomy, chemotherapy, and radiation with residuals and lumbar degenerative disc disease." *Id.*

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.* at 43.

- After Step Three but before Step Four, she had the RFC "to perform sedentary work . . . except occasional stooping, kneeling, crouching, and climbing of ramps/stairs; no crawling or climbing of ladders, ropes, or scaffolding; no exposure to extreme heat, extreme cold, humidity, wetness, vibrations, or hazards, such as unprotected heights, or dangerous machinery. She is able to understand, remember, carry out short, simple, routine instructions; able to sustain attention and concentration for at least two-hour periods at a time and for eight hours in the workday on short, simple, routine tasks; no fast paced production work, no assembly line work. In addition, sit for 30-45 minutes at a time for a total of up to 6 hours in the 8-hour workday; stand for 30-45 minutes at a time for a total of up to 2 hours in the 8-hour workday; walk for 30-45 minutes at a time for a total of up to 2 hours in the 8-hour workday." *Id.* at 44.

- At Step Four, Plaintiff "is unable to perform any past relevant work." *Id.* at 48.

---

[2] Substantial gainful activity is defined as work activity that is both substantial (involving significant physical or mental activities) and gainful (usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

2

- At Step Five, considering Plaintiff's "age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy" that she can perform. *Id.* at 49.

The Appeals Council denied review in November 2019, *id.* at 1, and in January 2020, Plaintiff brought this action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g), dkt. 1.

## II.
## Applicable Law

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts." *Id.* at 217. First, it requires an inability to engage in any substantial gainful activity. *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.* "The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274.

When an applicant seeks judicial review, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a

3

reasonable mind might accept as adequate to support a conclusion." *Id.* In evaluating the evidence, the Court gives the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and, if not, at Step Five to determine whether the claimant can perform other

work.  *See* 20 C.F.R. § 404.1520(e), (g).  The burden of proof is on the claimant for Steps One through Four, but shifts to the Commissioner at Step Five.  *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial.  *Barnett*, 381 F.3d at 668.  When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically appropriate.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion."  *Id.* (citation omitted).

## III.
## Analysis

### A. ALJ's evaluation of Plaintiff's chronic pain and medication side effects

Plaintiff argues that the ALJ impermissibly substituted her opinion for that of Plaintiff's treating physician when evaluating Plaintiff's chronic pain and medication side effects.  Dkt. 9 at 15, 17–18.  Plaintiff also challenges the ALJ's analysis of Plaintiff's subjective symptoms.

#### 1. Subjective symptom analysis

Plaintiff alleges that the ALJ erred by finding that the record did not support her allegations of worsening pain and significant medication side effects.  Specifically, Plaintiff faults the ALJ for opining that Plaintiff's treatment had been "conservative" and for using a "lack of updated objective

5

testing" and a "lack of a referral for injections or physical therapy" as evidence that Plaintiff's back pain had not worsened. *Id.* The Commissioner responds that these are "exactly the sort of thing[s] ALJs are to consider." Dkt. 14 at 10.

If an ALJ cannot make a fully favorable disability determination "based solely on objective medical evidence," then she should "carefully consider other evidence in the record" and the factors set forth in 20 C.F.R. § 404.1529(c)(3) to evaluate "the intensity, persistence, and limiting effects of an individual's symptoms." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017), at *6–8; *see* 20 C.F.R. § 404.1529(c)(3). These factors include "treatment, other than medication, [an individual] receive[s] or has received for relief of . . . pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(v).

It is undisputed that the ALJ acknowledged that Plaintiff's complaints of chronic pain were "generally consistent with the clinical findings from Dr. Sharma" and found that, based on Plaintiff's claims and the medical evidence, Plaintiff was limited to sedentary work. Dkt. 9 at 15; dkt. 14 at 9.

The ALJ also recognized her duty to "consider other evidence in the record" if the objective medical evidence alone could not substantiate Plaintiff's "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms.*" Id.* at 45. And the ALJ addressed Plaintiff's "treatment, other than medication" as required by SSR 16-3p by pointing to Plaintiff's "long history of pain management treatment with her primary care physician" and the lack of "updated objective testing." Dkt. 7-2 at 47. The ALJ also noted that the record did not "depict different treatment modalities such

6

as injections or a referral to physical therapy." *Id.* She also considered that Plaintiff had been referred to—but had not yet done—physical therapy, and that "there [was] no other evidence of treatment for her back pain specifically." *Id.* at 46. The ALJ then found that "[g]iven this entirely conservative treatment, consisting of just medication management, . . . the objective medical evidence of record is [not] supportive of the claimant's allegations of worsening lumbar degenerative disc disease." *Id.*

Plaintiff also contends that the ALJ erred by finding that the record did not support the severity and frequency of medication side effects that she reported. Dkt. 9 at 17. However, Plaintiff does not identify a specific 20 C.F.R. § 404.1529(c)(3) factor that the ALJ failed to consider. Instead, Plaintiff points out that:

- She is prescribed Tamoxifen to help with preventing a recurrence of breast cancer.
- She has reported "diffuse pain" since starting cancer treatment and that her pain was a five out of ten with medication.
- She has reported post-mastectomy pain.
- After completing cancer treatment, she had swelling and pain.
- All of these are known side effects of Tamoxifen.

Dkt. 9 at 17.

But the ALJ recognized this evidence that Plaintiff points to. Specifically, the ALJ noted Plaintiff's report of "severe" and "worsen[ing]" pain and "chemotherapy side effects includ[ing] nausea," dkt. 7-2 at 45, and that the

7

objective medical evidence documents "various residuals from her cancer treatment, including fatigue, memory issues, and edema," *id.* at 47. The ALJ also recognized that, beginning in November 2016, Dr. Goutsouliak supervised Plaintiff's Tamoxifen prescription and multiple times noted Plaintiff's progress, including:

- That Plaintiff "tolerated her treatment well"
- As of March 2017, Plaintiff was "continuing to do well without new symptoms related to her treatment"
- In September 2017, Plaintiff was "doing relatively well, but had developed fluid retention."
- In March 2018, Plaintiff was "noted as doing well from the history of radiation treatment perspective."

Dkt. 7-2 at 45–46. The ALJ also considered Plaintiff's activities of daily living, giving "partial weight" to "[t]he third-party activities of daily living . . . noting [Plaintiff's] fatigue, little stamina, and poor memory." Dkt. 7-2 at 47. After considering this evidence, the ALJ found that although "[Plaintiff] reported significant side effects from her medications, . . . the objective medical evidence of record does not support the severity and frequency alleged." Dkt. 7-2 at 47.

Because the ALJ built a logical bridge from the evidence to her conclusion that Plaintiff's statements concerning the intensity of her symptoms are not entirely consistent with the medical evidence, remand is not required on this ground. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005)

(finding no error when ALJ referred to plaintiff's treatment as "routine and conservative").

### 2. Treating physician's opinions

Plaintiff alleges that the ALJ erred by substituting her opinion for that of Plaintiff's treating physician, specifically pointing to (1) Dr. Kolody's conclusion that Plaintiff would be off task more than twenty-five percent of the workday and (2) Dr. Kolody's finding that Plaintiff experienced nausea, dizziness, blurred vision, fluid retention, memory loss, and mood swings as medication side effects. Dkt. 9 at 18. The Commissioner responds that the ALJ reasonably considered Dr. Kolody's opinion. Dkt. 14 at 15.

The ALJ must give a treating physician's opinion controlling weight if it is "well-supported and not inconsistent with other substantial evidence."[3] *Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016); *see also* 20 C.F.R. § 404.1527(c)(2)–(6). If "controlling weight" is not given to a treating physician's opinion, the ALJ must assign it a proper weight based on factors like the length and nature of the physician-patient relationship, the opinion's consistency with the record, and the physician's area of specialty. 20 C.F.R. § 404.1527(c)(2); *Kaminski v. Berryhill*, 894 F.3d 870, 875 (7th Cir. 2018). As long as the ALJ "minimally articulate[s]" her reasons, her decision to discount a treating physician's opinion will stand. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

---

[3] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Because Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See* 20 C.F.R. § 404.1527.

9

Plaintiff first points to Dr. Kolody's finding that she would be off task more than twenty-five percent of the workday. Dkt. 9 at 18. And while Plaintiff says that this finding is "in part due to the side effects from her medication," that is not what is reflected in the record. Rather, Dr. Kolody concluded that Plaintiff's *pain* was "severe enough to interfere with attention and concentration" 25% or more of an 8-hour workday. Dkt. 7-8 at 78. And, as discussed above, the ALJ adequately explained her reasons for discounting Plaintiff's assessment of the severity of her pain.

Plaintiff next contends that the ALJ substituted her opinion for Dr. Kolody's by finding that the record did not support Plaintiff's reports of significant medication side effects. Dkt. 9 at 17. Specifically, Plaintiff points to Dr. Kolody's finding that Plaintiff experienced "nausea, dizziness, blurred vision, fluid retention, memory loss, and mood swings" as medication side effects, *id.*; dkt. 9 at 18.

However, the ALJ explicitly noted Dr. Kolody's conclusion that Plaintiff experienced side effects, dkt. 7-2 at 47, and mentioned Plaintiff's side effects in her analysis. *See* dkt. 7-2 at 45 (noting that Plaintiff reported chemotherapy side effects including nausea, radiation, and "severe" pain); *id.* (noting Dr. Goutsouliak's finding that Plaintiff "was doing relatively well, but had developed fluid retention); *id.* at 47 ("[s]ubsequent treating evidence depicted the claimant as having stable fatigue . . . but overall, feeling well and doing well"). And while Plaintiff argues that Dr. Kolody was in a better position to judge the severity of

her side effects, she has not pointed to any finding by Dr. Kolody that contradicts the ALJ's evaluation of the severity of her side effects.

In addition, the ALJ gave Dr. Kolody's medical source statement "little weight," because "the treating objective medical evidence of record . . . d[id] not support the severity nor does the treatment record, updated studies, or referrals support such strict limitations." *Id.* at 48. And as discussed above, the ALJ explained how the objective medical evidence, including Dr. Goutsouliak's findings, did not support the "severity . . . or such strict limitations." *See* dkt. 7-2 at 45–46.

Notwithstanding the contradicting medical evidence, the ALJ addressed many of Dr. Kolody's recommendations in Plaintiff's RFC. Specifically, the ALJ "limited [Plaintiff's] standing, walking, and sitting at one time to address her lumbar degenerative disc disease." *Id.* at 46. Specifically, the ALJ limited Plaintiff's standing and walking to 30-45 minutes at a time for a total of up to 2 hours in an 8-hour workday, consistent with Dr. Kolody's standing/walking recommendation. *Id.* at 44; dkt. 7-8 at 76. And even though the State agency medical consultants found that Plaintiff was able to perform "light residual exertional work," the ALJ imposed "additional limitations to the sedentary level when considering her fatigue and simple, repetitive, tasks for memory." Dkt. 7-2 at 48.

Because the ALJ "minimally articulate[d]" her reasons for not giving Dr. Kolody's opinions controlling weight, remand is not required on this ground. *See Edler*, 529 F.3d at 415.

### B. Non-severe impairments

Plaintiff argues that the ALJ erred by (1) failing to address evidence relating to her ability to concentrate and (2) not fully addressing concentration and persistence limitations in the RFC. Dkt. 9 at 16–17.

### 1. Assessment of supportive evidence

"An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted). "But an ALJ need not mention every piece of evidence, so long [as] [s]he builds a logical bridge from the evidence to h[er] conclusion." *Id.*

Plaintiff claims that the ALJ failed to address statements from Dr. Deardorff that she "was anxious, fidgeted, answered two remote memory questions incorrectly, could not complete serial threes, and stated that her attention and concentration were 'only marginally adequate.'" Dkt. 9 at 16. The Commissioner responds that the ALJ need not consider every piece of evidence and, even so, expressly noted this evidence. Dkt. 14 at 13.

At Step Four, the ALJ discussed much of the evidence that Plaintiff points to, including that Dr. Deardorff evaluated Plaintiff for allegations of anxiety in August 2016. Dkt. 7-2 at 42. The ALJ noted that, at this exam, Dr. Deardorff found that Plaintiff "presented as anxious . . . moved slowly and appeared to have little energy." *Id.* The ALJ also considered Dr. Deardorff's report that Plaintiff "stated she had anxiety and worry . . . [and] that [her]

12

comments were suggestive of occasional intrusive thoughts." *Id.* The ALJ also considered Plaintiff's disability report, in which Plaintiff stated she had trouble staying focused and could not concentrate "very long." *Id.* at 43. The ALJ then found that Plaintiff had a "mild limitation" in concentrating, persisting, or maintaining pace. *Id.*

Because the ALJ considered evidence relevant to these limitations, she did not "ignore an entire line of evidence" and remand on this ground is not required. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

### 2. Concentration and persistence limitations

In determining a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 374184, at *5; *see Villano*, 556 F.3d at 563. Here, the ALJ found that Plaintiff "has a mild limitation" in concentrating, persisting, or maintaining pace. Dkt. 7-2 at 43. A "mild limitation" means that a person's ability to function "independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F(2)(b) (Mar. 14, 2018).

Plaintiff alleges that her mild limitation in concentration, persistence, and pace is not reflected in the RFC. Dkt. 9 at 16. The Commissioner responds that the ALJ supported her findings with substantial evidence and that Plaintiff has not provided evidence that a mild limitation would cause greater restrictions than those imposed in the RFC. Dkt. 14 at 12.

The ALJ "addressed both [Plaintiff's] fatigue and memory issues" by limiting her to "sedentary work activities at the simple, repetitive task level." Dkt. 7-2 at 47. In making the RFC finding, the ALJ gave "partial weight" to the third-party activities of daily living, noting Plaintiff's "fatigue, little stamina, and poor memory." *Id.* Furthermore, while the State agency medical consultant found Plaintiff capable of performing light exertional work and anticipated improvement with fatigue, the ALJ found that the "objective medical evidence of record supports additional limitations . . . when considering her fatigue and simple, repetitive, tasks for memory." *Id.* at 48.

The RFC states: "[Plaintiff] is able to understand, remember, carry out short, simple, routine instructions; able to sustain attention and concentration for at least two-hour periods at a time and for eight hours in the workday on short, simple, routine tasks; no fast paced production work, no assembly line work." Dkt. 7-2 at 44. And while an ALJ may not use "catch-all terms like 'simple, repetitive tasks'" alone, the RFC here explicitly considers Plaintiff's ability to "perform . . . tasks . . . over the course of a standard eight-hour workday." *Id.* at 44; *cf. Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (noting that the phrase "simple, repetitive tasks" alone says nothing about what an individual can do on a sustained basis).

The RFC, thus, accounts for the "totality of [Plaintiff's] limitations" and Plaintiff does not argue—nor does any medical opinion recommend—that additional limitations should have been included in the RFC. *See Recha v. Saul*, No. 19-3544, 2021 WL 164914, at *3 (7th Cir. Jan. 19, 2021).

14

Because Plaintiff's mild limitation in concentration, persistence, or pace was adequately reflected in the RFC, remand on this ground is not required.

### C. Closed period

Finally, Plaintiff contends that the ALJ erred by not considering whether her breast cancer met or medically equaled Listing 13.10 for a closed period of disability from January 2016 through January 2017 and by not seeking a medical opinion on that Listing. Dkt. 9 at 18–19. The Commissioner responds that the ALJ considered relevant evidence and determined that Plaintiff's impairments did not meet or medically equal Listing 13.10 and that the ALJ did obtain a medical expert opinion. Dkt. 14 at 15–16.

A claimant is entitled to benefits if she is disabled for any period "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Even if an ALJ finds that a claimant is not disabled as of the date of the decision, the question remains whether she "was unable to engage in substantial gainful activity for any continuous period of at least 12 months since the alleged onset date." *Reed v. Colvin*, No. 1:14-cv-080 JD, 2015 WL 4921614, at *7 (N.D. Ind. Aug. 18, 2015), *aff'd*, 656 Fed. Appx. 781 (7th Cir. 2016).

At Step Three, the ALJ gave "considerable" deference to the opinions of reviewing physicians, Dr. Brill and Dr. Everett, who reviewed Plaintiff's records in September 2016 and December 2016. Dkt. 7-2 at 43–44. Dr. Brill and Dr. Everett submitted "Disability Determination and Transmittal" forms finding no Listings applicable to Plaintiff. Dkt. 7-3 at 38–40, 51–53, 64–67. The ALJ then

15

concluded that "the parameters of Listing 13.10 are not met or medically equaled." Dkt. 7-2 at 43–44; *see also* dkt. 7-3 at 38–40, 51–53, 64–67. The ALJ also noted that Plaintiff's "records d[id] not show locally advanced cancer, or carcinoma with metastases to the supraclavicular or infraclavicular modes to 10 or more axillar nodes or with distant metastases, or recurrent carcinoma, or small cell carcinoma, or with secondary lymphedema caused by anti-cancer therapy." Dkt. 7-2 at 44 (citing records of Dr. Sharma and Dr. Kolody).

Since "[Disability Determination and Transmittal] forms conclusively establish that consideration . . . has been given to the question of medical equivalence," an "ALJ may properly rely upon" them for Listing determinations. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). And although Plaintiff argues that her treatment did not end until after both physicians' review, that argument is unpersuasive because the reviews each took place *during* the proposed closed period. Further, Plaintiff has not pointed to any evidence in the record which contradicts the two physicians' findings regarding Listing 13.10.

Moreover, the ALJ discussed Plaintiff's breast cancer diagnosis and treatment elsewhere in her decision. *See Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021) (holding that courts may "review[] an ALJ's step-three determination in light of elaboration and analysis appearing elsewhere in the decision"). Specifically, the ALJ noted that the Plaintiff was diagnosed with a "malignant neoplasm involving both nipple and areola of the right breast." Dkt. 7-2 at 45. The ALJ also considered Plaintiff's breast cancer treatment, which

16

started in January 2016, and continued until November 2016, *id.* at 45–46, and that afterwards Plaintiff continued to be seen for pain management and follow up appointments, *id.* at 45–46; *see Fleming v. Astrue*, 448 Fed. Appx. 631 (7th Cir. 2011) (finding ALJ adequately considered a closed period where he relied on medical records and an assessment by a state-agency physician from within the proposed period of disability).

When viewed in conjunction with the ALJ's reliance on two medical doctors' Listing determinations, this discussion offers more than "perfunctory" analysis to support the ALJ's conclusion that Plaintiff did not meet or medically equal Listing 13.10 at any point in time. *See Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015); 20 C.F.R. Pt. 404, Subpt. P, App. 1.

## IV.
## Conclusion

The Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 5/20/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Brian J. Alesia
OFFICE OF REGIONAL CHIEF COUNSEL FOR SOCIAL SECURITY
brian.alesia@ssa.gov

Joshua P. Dehnke
SOCIAL SECURITY ADMINISTRATION
joshua.dehnke@ssa.gov

Jonelle L. Redelman
REDELMAN LAW LLC
jonelle@redelmanlaw.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov